IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :          CRIMINAL ACTION
                                  :          NO. 09-314
                                  :
              v.                  :
                                  :
JOSEPH YOKSHAN                     :


M E M O R A N D U M[1]

EDUARDO C. ROBRENO, J.                              OCTOBER 1, 2009

## I.   FACTS

Defendant Joseph Yokshan ("Defendant") is charged with one count of knowingly and intentionally possessing with intent to distribute a mixture and substance containing a detectable amount of oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).

Beginning in 2004, the Bensalem Township Police Department Special Investigations Unit ("SIU") obtained information from various sources that the Defendant was engaged in the distribution of narcotics, specifically Percocet and Oxycontin pills.  (Def.'s Mot. to Suppress Evid. Ex. C, doc. no. 13.)[2]  In February 2007, Officer Schwartz of the SIU spoke with

---

[1]    This Memorandum contains the Court's findings of fact and conclusions of law.

[2]    Members of the SIU received substantive information from separate sources that implicated the Defendant's involvement in narcotics activity.  In April 2004, two confidential informants alerted members of the SIU to the Defendant's selling

Confidential Informant 07-06 ("C.I. 07-06") who stated that the Defendant sold Percocet pills (among other drugs) and that C.I. 07-06 purchased drugs at the Defendant's residence, located at 2472 Greenland Court, Bensalem, PA 19020 (the "Residence"), more than twenty times the previous year.  Id.

On December 4, 2007, members of the SIU conducted a controlled buy of Oxycontin pills from an individual known to the SIU ("Person 1"), after which SIU officers followed Person 1 to the Defendant's Residence and observed Person 1 enter the Residence and leave approximately 3 minutes later.  Id.  Person 1 was arrested on narcotics charges and upon questioning informed the SIU that the Defendant sold large quantities of Percocet pills; that Person 1 purchased Percocet pills from the Defendant on numerous occasions in the preceding six months; that the Defendant drove to New York to purchase his supply of pills; and that the Defendant drove a tan Nissan Altima with Dare License Plates. (Id.; Id. at Ex. A, Aff. ¶ 6).

_____

various narcotics, including Percocet pills.  (Id.)  In October 2006, a separate confidential source informed SIU officers that the Defendant sold Percocet pills and that the Defendant drove a gold Maxima bearing a Pennsylvania DARE license plate (Id.)  In May 2007, an anonymous source told the SIU that he purchased drugs from the Defendant and that the Defendant drove a Nissan Altima.  (Id.)  On December 3, 2007, a confidential source told Officer Schwartz of the SIU that he had purchased drugs from the Defendant over 100 times in the previous year and that the Defendant drove a "champagne colored Nissan with Dare License plates."  (Id.)

On December 20, 2007, at the request of the SIU, Person 1 engaged in a controlled buy of four Percocet pills in exchange for $40.00 pre-recorded buy money from the Defendant at the Residence (the "Controlled Buy").  (Id. at Ex. A, Aff. ¶ 7; Id. at Ex. C.)  The Controlled Buy consisted of SIU Officers issuing pre-recorded buy money to Person 1 and following him, without Person 1's knowledge, to the Defendant's Residence.  (Mot. to Suppress Hr'g Tr. 22:22-23:25, Sept. 3, 2009.)  The Defendant was observed exiting the Residence and directly entering Person 1's vehicle, after which Person 1's vehicle drove around the Residence for approximately 30 seconds, at which time the Defendant was observed exiting the Vehicle and returning to his Residence.  (Id.)

In June 2008, Officer Schwartz spoke to a person known to SIU ("Person 2") who stated that Person 2 purchased Percocet pills in bulk from the Defendant between 60-70 times in the previous year.  (Def.'s Mot. to Suppress Evid. Ex. C.)  Person 2 further stated that the Defendant drove to New York City in a "champagne colored Nissan Altima or Maxima" and that the Defendant drove to New York City "at least once a week" in order to purchase his narcotics supply.  (Id.)[3]  SIU Officer Schwartz

_____

[3]   Subsequent to Person 2 providing this information, the SIU became aware that Person 2 told several individuals that he was arrested and had supplied law enforcement with information about his narcotics source, but that he had no intention of assisting law enforcement and was going to "'string' the police

verified through surveillance that the Defendant drove a Nissan Altima bearing Pennsylvania DARE license plate DA6A70 (the "Vehicle"), and confirmed through the records of the Bureau of Motor Vehicles that license plate DA6A70 is registered to the Defendant.[4]  (Id.)

On August 11, 2008, Confidential Source 08-36 ("C.I. 08-36") advised the SIU that he bought Percocet and Oxycontin pills from the Defendant over 100 times in the previous eight years and that C.I. 08-36 last observed the Defendant with narcotics in June 2008.  (Id.)  The same day, C.I. 08-36 informed the SIU that the Defendant responded to a request by C.I. 08-36 to purchase Percocet pills by stating that he was on his way to "re-up" his supply and would contact C.I. 08-36 upon his return. (Id.)

On August 18, 2008, Special Agent Jeffrey Lauriha of the Drug Enforcement Agency ("DEA") applied for a warrant authorizing the installation of a Global Positioning System ("GPS") device on the Vehicle for the purpose of investigating

---

along with their investigation."  Id.  Person 2 was confronted by SIU Officer Schwartz regarding these statements, and Person 2 subsequently assisted members of the SIU with an attempt to execute a controlled buy from the Defendant which was never consummated.  Id.

[4]    The registered address of the Vehicle matched the Defendant's known address, 2472 Greenland Court, Bensalem, PA 19020.

Defendant's involvement in drug-related activities.  (Id. at Ex. A, Aff. ¶ 2.)  The warrant was approved by the Honorable Timothy R. Rice and expired 45 days after its execution(the "Original Warrant").  On August 21, 2008, Special Agent Richard Ellwanger of the DEA installed the GPS device on the outside of the Vehicle while it was parked in the driveway of the Defendant's Residence.

Information provided by monitoring the GPS device revealed that the Defendant traveled to the Franklin Mills Mall in Northeast Philadelphia, which Person 2 identified as a location at which he purchased Percocet pills from the Defendant. (Id. at Ex. B, Aff. ¶ 12.)  The Extension Warrant did not state the dates on which Person 2 had purchased Percocet pills from the Defendant at the Franklin Mills Mall.  Monitoring of the GPS tracking device failed to reveal any trips by the Defendant to New York City in the Vehicle.  (Id. at ¶ 13.)  On September 30, 2008, the Honorable Linda K. Caracappa approved a 45-day extension of the Original Warrant (the "Extension Warrant," and together with the Original Warrant, the "Warrants").  Both the Original Warrant and the Extension Warrant were accompanied by affidavits setting forth the basis for probable cause (collectively, the "Affidavits").

On November 11, 2008, law enforcement agents were alerted that the Vehicle was traveling to New York City based on

information from the GPS device.[5]   (Id. at Ex. C.)  Approximately
ten minutes after arrival in New York City, the Vehicle departed
back toward Pennsylvania, making one brief stop at a rest stop on
the New Jersey Turnpike.  (Id.)  The SIU officers initiated a
traffic stop of the Vehicle upon its exit from the Pennsylvania
Turnpike.[6]  (Id.)  The SIU officers observed the Defendant's
nervousness in reaction to the stop.  This apprehension was
manifested by the Defendant: (1) having shaky hands; (2) dropping
his wallet when his identification was requested; (3) refusing to
make eye contact with SIU Officer Schwartz; and (4) repeating the
questions posed by SIU Officer Schwartz.  (Id.)  The Defendant
stated to the officers that he was returning from a 2-3 hour
visit with a relative in Cumberland, New Jersey.  (Id.)  The
Defendant specifically failed to mention traveling to New York
City.  (Id.)  Upon the Defendant being informed that he was being
detained on suspicion of a felony, the Defendant asked one of the
officers what he was "looking at" and the officer responded that

---

[5]     The Government and the Defendant dispute whether the
area at which the Vehicle stopped in New York City (the
approximate vicinity of 158th Street and Amsterdam Avenue) was a
known location for drug-related activities. (See id. at Ex. C)
(stating that this location "is the same area previous[ly]
mentioned where [the Defendant] picks up his controlled
substances for sale").

[6]     The affidavit notes that the SIU officers observed that
the Vehicle had dark tinted windows, but does not indicate that
this potential traffic violation was the basis for the stop.
(See id.)

the Defendant was looking at going to "jail for a long time for what was in his car."  (Id.)  In response to this statement, the Defendant "made a large sigh and exhaled."  (Id.)

The Defendant was transported to Bensalem Police Headquarters, given his Miranda warnings, and interviewed by police for approximately 30 to 45 minutes at which time the Defendant admitted in writing to possessing Percocet pills with the intent to sell.  After obtaining a search warrant, law enforcement officers performed a search of the Vehicle and recovered, among other contraband, 2,000 Percocet pills.[7]

The Defendant filed (1) a motion to suppress evidence concerning the use of the GPS device based on an allegedly defective warrant; and (2) a motion to suppress evidence and statements arising from the Defendant's custodial detention based on a lack of probable cause.

## II. DEFENDANT'S MOTION TO SUPPRESS EVIDENCE BASED ON DEFECTIVE WARRANTS

The Defendant moves to suppress evidence recovered pursuant to the Warrants authorizing installation of the GPS

---

[7]     The Defendant also consented to a search of the residence located at 3128 Friendship Street in Philadelphia, which is the address that the Defendant departed from on his trip to New York City on November 11, 2008.  Officers recovered 24 various pills and some marijuana smoking devices.  Officers also obtained consent to search the Defendant's Residence, but did not recover any narcotics.  The results of these additional searches are not germane to the Defendant's motions.

device on the Vehicle on the basis that the Affidavits in support of the Warrants are defective.

The Warrant Clause of the Fourth Amendment provides in pertinent part that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation."  Const. amend IV. Evidence recovered pursuant to a warrant obtained in violation of the Fourth Amendment is subject to the exclusionary rule, unless the actions of the government fall under one of the judicially sanctioned exceptions to the rule.  See United States v. Leon, 468 U.S. 897, 906 (1984) (noting that the exclusionary rule is a judicially created safeguard of Fourth Amendment rights, but is not itself a personal constitutional remedy).

**1. Misleading Affidavits In Support of the Warrant.**

A.   <u>Franks Analysis</u>

A two-step mechanism has been developed in order for a defendant to overcome the general presumption of validity with respect to affidavits in support of search warrants.  Franks v. Delaware, 438 U.S. 154, 171-72 (1978); United States v. Yusuf, 461 F.3d 374, 383 (3d Cir. 2006).

First, in order to be eligible for a hearing, the defendant is required to establish a "substantial preliminary showing" that the challenged affidavit contained a statement that was deliberately false or showed a reckless disregard for the truth, and that such statement was material to a finding of

probable cause.  Franks, 438 U.S. at 171; Yusuf, 461 F.3d at 383.
In order to make this preliminary showing, the defendant is
required to present an offer of proof contradicting the
affidavit, such as sworn affidavits or otherwise reliable witness
statements, and is precluded from relying on conclusory
statements or a "mere desire to cross-examine." Franks, 438 U.S.
171.

Second, if such a Franks hearing is necessary, the
defendant must prove by a preponderance of the evidence: "(1)
that the affiant knowingly and deliberately, or with a reckless
disregard for the truth, made false statements or omissions that
create a falsehood in applying for a warrant; and (2) that such
statements or omissions were material, or necessary, to the
probable cause determination." Yusuf, 461 F.3d at 383, (citing
Sherwood v. Mulvill, 113 F.3d 396, 399 (3d Cir. 1997)).

Proving reckless disregard for the truth requires more
than a mere showing of "negligence or innocent mistake." Wilson
v. Russo, 212 F.3d 781, 787 (3d Cir. 2000) (quoting United States
v. Davis, 617 F.2d 677, 694 (D.C. Cir. 1979)).  The Third
Circuit has established the standard for a finding of "reckless
disregard for the truth" for both misstatements and omissions as
follows:

> In evaluating a claim that an officer both
> asserted and omitted facts with reckless
> disregard for the truth, we hold that: (1)
> omissions are made with reckless disregard for

> the truth when an officer recklessly omits facts
> that any reasonable person would know that a
> judge would want to know; and (2) assertions are
> made with reckless disregard for the truth when
> an officer has obvious reasons to doubt the
> truth of what he or she is asserting.

Id. at 783.  The defendant ultimately must prove by a preponderance of the evidence that a hypothetical corrected affidavit does not support a finding of probable cause, i.e., "that the deficiency in the affidavit was material to the original probable cause finding."  Yusuf, 461 F.3d at 383 (citing Wilson, 212 F.3d at 788).  Two separate but interrelated tests are employed in determining whether the alleged deficiencies are material.  Id. at 383-84.  A court is required to excise an affirmatively false statement from the affidavit, whereas with respect to an omission, the court "must remove the 'falsehood created by an omission by supplying the omitted information to the original affidavit.'"  Id. at 384 (quoting Sherwood, 113 F.3d at 400).

The Defendant fails to establish the necessary "substantial preliminary showing" to warrant a Franks hearing since the Defendant cannot demonstrate that the purported omissions are necessary to a finding of probable cause in light of the plethora of available corroborating evidence.  In short, the Defendant highlights minor and/or inconsequential discrepancies that are insufficient to overcome the presumption of validity with respect to the Affidavits in support of the

-10-

Warrants.

B.   Alleged Omissions were not Material

The Defendant identifies six alleged omissions which render the affidavits invalid.  Omission one, the Defendant contends that the Affidavits omitted statements by Person 1 and Person 2 that the Defendant sold drugs in bulk, which the Defendant argues should have been included to question the validity of the Controlled Buy involving only four pills. (Def.'s Mot. to Suppress Evid. ¶¶ 10-11, 13-14.)  The Affidavits clearly convey that Person 1 and Person 2 stated to SIU officers that the Defendant usually sold narcotics in bulk.  (See id. at Ex. A, Aff. ¶ 6) (stating that the Defendant "usually sold pills in bulk"); (Id. at ¶ 8) (stating that Person 2 "purchased Percocet pills in bulk" from the Defendant).

Omission two, the Defendant's claim that the affidavit in support of the Extension Warrant failed to include the results of the monitoring of the GPS device pursuant to the Original Warrant is baseless.  To the contrary, the affidavit in support of the Extension Warrant unambiguously reflected that the monitoring revealed trips to a location where the Defendant had engaged in drug transactions (the Franklin Mills Mall in Northeast Philadelphia) and explicitly stated that the GPS device did not reveal any trips to New York by the Vehicle. (Id. at Ex. B, Aff. ¶¶ 12-13.)

-11-

Omission three, the Defendant further argues that the following information was wrongfully omitted from the Affidavits based on its relevance in contradicting the information provided by Person 1 and Person 2 as well as the Controlled Buy: (1) that the Defendant "only keeps drugs at his girlfriend's house," (2) that the Defendant "only sells narcotics in bulk," and (3) that the Defendant is "afraid to sell narcotics in Bensalem where [the Defendant] resides."  (Def.'s Mot. to Suppress Evid. ¶¶ 10-11, 13-14.)  The Defendant's demands that the Affidavits state that the Defendant sold drugs "only" in bulk and stored drugs "only" at his girlfriend's house are inaccurate depictions of the information relied upon by the Affidavits.  Neither Person 1 nor Person 2 conveyed to SIU officers that the Defendant sold drugs exclusively in bulk or stored drugs exclusively at his girlfriend's house.  (See id. at Ex. C) (detailing a statement from Person 1 that the Defendant "will usually only sell pills in bulk"; statements from both Person 1 and Person 2 that the Defendant supplied pills to at least one individual named Jackie McCormick; and statements from Person 2 that the Defendant's drugs "are kept in [the Defendant's] bedroom at his residence and that Person 2 "has purchased percocet directly out of [the Defendant's] residence 4-5 times in the past").  The omission regarding the Defendant's fear of selling narcotics in Bensalem Township may qualify as a fact that a judge would want to know

-12-

under <u>Wilson</u> in order to weigh the reliability of the
information that the Defendant sold drugs from his Residence.
<u>See</u> <u>Wilson</u>, 212 F.3d at 783 (holding that "omissions are made
with reckless disregard for the truth when an officer recklessly
omits facts that any reasonable person would know that a judge
would want to know" in determining probable cause).  This fact
alone, however, is not necessary to the finding of probable
cause in light of the Controlled Buy that occurred at the
Defendant's Residence and the independent corroborating
information received from several sources that the Defendant
sold narcotics directly from his Residence.

        Omission four, although the Affidavits did state that
the Controlled Buy was conducted "from [the Defendant's]
residence" and that the purchase of the narcotics actually
occurred in Person 1's vehicle, this contradiction does not
satisfy the <u>Franks</u> requirements for two reasons.  First, there
is no indication that this statement was deliberately false or
recklessly disregarded the truth.  Officer Schwartz explained in
detail that it was his understanding that the Controlled Buy did
occur at the Residence because the drugs were taken directly
from the Residence and the exchange in Person 1's vehicle was
merely nominal.  (<u>See</u> Mot. to Suppress. Hr'g Tr. 47:9-48:25)
This minimal discrepancy was not material to a finding of
probable cause because it does not cast doubt on the overall

-13-

validity of the Controlled Buy and because the Warrants sought authorization to track the Defendant's Vehicle rather than search his Residence.

The second reason that the Defendant fails to satisfy the preliminary showing under <u>Franks</u> is that he fails to address the notion that none of the proposed "contradictions" stemming from these omissions actually created falsehoods since the inconsistent information can be reconciled.  The Defendant could have sold drugs in bulk <u>and</u> to individuals; kept drugs at <u>both</u> the Residence and his girlfriend's house; and feared selling drugs in Bensalem Township but did so anyway.[8]

Omission five, the Defendant further contends that the Affidavits were rendered misleading based on the omissions that Person 1 was not arrested on a narcotics charge until after the Controlled Buy, and that Person 2 claimed that he was "stringing" the police along in their investigation.  The Government presented evidence that patently contradicts the Defendant's assumption that Person 1 was not charged until after the Controlled Buy.  (<u>See</u> Mot. to Suppress Hr'g Tr. 49:19-50:4.)

Moreover, the very fact that the SIU successfully

---

[8]   Even assuming these contradictions do exist, they are not material based on the limited scope of the Warrant.  The Affidavits sought only to establish that the Defendant sold narcotics, purchased narcotics from New York, and used the Vehicle to transport his supply of drugs.  (<u>Id.</u> at Ex. A, Aff. ¶ 4.)  Therefore, the Defendant's alleged contradictions do not undermine the finding of probable cause on these limited grounds.

completed the Controlled Buy bolsters the reliability of the information from Person 1.  See United States v. Sanchez, 246 Fed. Appx. 803, 806-07 (3d Cir. 2007) (non-precedential decision) (holding that officer's omissions regarding an informant's questionable credibility concerning his arrests were not material to probable cause where the informant participated in several controlled buys); United States v. Nelson, 450 F.3d 1201, 1214 (10th Cir. 2006) ("Given the level of independent corroboration provided by police surveillance of the confidential informant's controlled buys . . . the addition of negative information about the confidential informant's credibility or veracity would not change the outcome because it does nothing to defeat a showing of probable cause."); United States v. McKinney, 143 F.3d 325, 329 (7th Cir. 1998) ("Controlled buys add great weight to an informant's tip.") (internal citations omitted).

Similarly, although Person 2's statement that he intended to "string along" the police directly impacts his credibility, it is counterbalanced by the fact that Person 2 subsequently agreed to participate in a controlled buy and that the information provided by Person 2 was corroborated independently by the litany of evidence concerning the

Defendant's drug activities.[9]  Therefore, this omission, when weighed against all other existing evidence, cannot be said to undermine the finding of probable cause.

Omission six, the final omission raised by the Defendant is the failure of the Affidavits to include a visual confirmation by members of the SIU that the Defendant personally participated in the Controlled Buy.  (Def.'s Mot. to Suppress Evid. ¶ 7.)  In United States v. Frost, 999 F.2d 737, 742-43 (3d Cir. 1993), a detective omitted from a warrant affidavit that a drug-sniffing dog failed to alert to the presence to drugs in a suitcase on the basis that narcotics traffickers commonly use scent-masking techniques.  The detective stated that if the failure to alert would have been included it would have been accompanied by an explanation of the methods used to mask narcotics' odors.  Id. at 743.  The Third Circuit found that the relevant inquiry was whether probable cause still existed assuming the failure to alert was disclosed in conjunction with the explanation of the scent-masking techniques.  Id.  The court concluded that in light of the substantial amount of independent incriminating evidence, the omission of the failure to alert, considered concurrently with the information on scent-masking

---

[9]    The Defendant does not even address the equally plausible scenario that Person 2's statements that he intended to string police along were untruthful boasting to others and that Person 2 truly intended to provide accurate information to the SIU.

techniques, did not invalidate the finding of probable cause.
Id.

Here, the Affidavits did not include visual
confirmation of the Defendant's participation in the Controlled
Buy.  This disclosure, however, presumably would have included
an explanation of the procedure for a controlled buy, i.e., that
Person 1 was searched for narcotics immediately before and after
the Controlled Buy.  (See Mot. to Suppress Hr'g Tr. 22:22-
23:25.)  This concurrent disclosure, in light of the
independent corroborating evidence of the Defendant's
involvement in narcotics activity, forecloses the argument that
this omission was material to a finding of probable cause.

　　　　　2.  **Lack of Probable Cause due to Stale Information.**

　　　　　　　A.   "Totality-of-the-Circumstances" Test

The determination of whether probable cause exists to
justify the issuance of a search warrant is guided by the
totality-of-the-circumstances approach.  Illinois v. Gates, 462
U.S. 213, 238 (1983).  As noted in Gates, "probable cause is a
fluid concept –- turning on the assessment of probabilities in
particular factual contexts –- not readily, or even usefully,
reduced to a neat set of legal rules."  United States v. Jones,
994 F.2d 1051, 1056 (3d Cir. 1993) (citing Gates, 462 U.S. at
232).

The reviewing court should give "great deference" to

the Magistrate Judge's determination of probable cause.  United States v. Loy, 191 F.3d 360, 365 (3d Cir. 1999); United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) ("The Court need not determine whether probable cause actually existed, but only whether there was 'a substantial basis for finding probable cause.'" (quoting Jones, 994 F.2d at 1054).  A finding of probable cause must be upheld, even where the reviewing court would have reached a different conclusion in a particular case, so long as the determination was consistent with the minimal substantial basis standard.  United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993) (citing Gates, 462 U.S. at 236).

B.   The Information in the Affidavits was not Stale

The Defendant's argument that the information relied upon in the Affidavits is stale and thus lacks probable cause is unavailing.  It is well-established that while stale information precludes a finding of probable cause, the nature of the crime and type of evidence presented, rather than merely the age of the information, must be considered in making such a determination.  United States v. Harvey, 2 F.3d 1318, 1322 (3d Cir. 1993).  The Third Circuit Court of Appeals has explained that "where the facts adduced to support probable cause describe a course or pattern of ongoing and continuous criminality, the passage of time between the occurrence of the facts set forth in the affidavit and the submission of the affidavit itself loses

-18-

significance." <u>United States v. Urban</u>, 404 F.3d 754, 774 (3d
Cir. 2005)(internal citations omitted).  The protracted and
continuous nature of narcotics operations, such as those
allegedly engaged in by the Defendant, extend the shelf life of
information in determining staleness.  <u>See</u> <u>United States v.</u>
<u>Tehfe</u>, 722 F.2d 1114, 1119 (3d Cir. 1983); <u>see e.g.</u>, <u>United</u>
<u>States v. Ritter</u>, 416 F.3d 256, 263 (3d Cir. 2005) (upholding a
finding of probable cause based on observation of narcotics
activity that occurred seven months earlier because the later
search involved a similar type of narcotics offense); <u>United</u>
<u>States v. Filiberto</u>, 712 F. Supp. 482, 486 (E.D. Pa. 1989)
(finding that information obtained two years prior to arrest was
not stale in light of the continuous nature of narcotics
trafficking alleged in the affidavit); <u>United States v. Smith</u>,
266 F.3d 902, 904-05 (8th Cir. 2001) (information in the
affidavit regarding three controlled buys at defendant's
residence occurring three months prior to application for search
warrant not stale).

     The Affidavits in this case relied upon information
from Person 1 and Person 2, which was corroborated by several
independent sources and the completion of the Controlled Buy,
all of which established an ongoing course of drug-related
activities by the Defendant.  The application for the Original
Warrant was sought two months after the SIU received

comprehensive information from Person 2 which corroborated Defendant's involvement in the sale of narcotics, specifically Percocet pills, along with the use of the Defendant's Vehicle to transport his supply of narcotics from New York City.  The application for the Extension Warrant was sought promptly upon the pending expiration of the Original Warrant and included fresh information with respect to the results of the Original Warrant.  The gap of several months between the Controlled Buy in December 2007 and the application for the Original Warrant in August 2008 is reasonable in light of the duty of law enforcement officials to confirm the veracity of such information through independent investigation prior to seeking a warrant.  Here, the delay by the SIU in seeking the Warrants is understandable in the context of the Defendant's ongoing narcotics activities and is insufficient to overturn the determination of probable cause rendered by two independent magistrate judges.[10]

**3.    Requirement of a Search Warrant.**

---

[10]    Even if the Court concludes that a substantial basis for the finding of probable cause did not exist, the results of the Warrants would still be valid under the "Good Faith Exception" to the warrant requirement.  Leon, 468 U.S. at 926 (holding that the exclusionary rule should not be used to suppress evidence when the officers who obtained the evidence acted in reasonable reliance on a search warrant issued by a neutral and detached magistrate that is later found to be invalid).

The Government argues in the alternative that no
warrant was required because the installation of the GPS device
did not violate the Defendant's reasonable expectation of
privacy and that no warrant was required after installation
because "[a] person traveling in an automobile on public
thoroughfares has no reasonable expectation of privacy in his
movements from one place to another." United States v. Knotts,
460 U.S. 276, 281 (1983).  Courts have extended the holding in
Knotts to GPS tracking devices placed on automobiles, however,
these cases address situations where the GPS device was
installed on the vehicle while located in a public street.  See
United States v. Garcia, 474 F.3d 994, 996-98 (7th Cir. 2007)
(holding that no search occurred for Fourth Amendment purposes
when police placed a GPS tracking unit underneath a defendant's
vehicle); Morton v. Nassau County Police Department, 05-CV-4000,
2007 WL 4264569, *3-4 (E.D.N.Y. Nov. 27, 2007) (extending
Knotts' holding to GPS tracking devices).  In this case, the GPS
device was installed while the Vehicle was parked in the
Defendant's driveway, and therefore a minimal intrusion on the
Defendant's reasonable expectation of privacy in his home is
implicated.  Therefore, since sufficient independent grounds
exist to deny the motion, there is no need to address this issue
because the Warrants in this case were duly authorized and
executed.

In conclusion, the Defendant does not put forth a substantial preliminary showing that the purported omissions were material to a finding of probable cause or that the information relied upon in the Affidavits was stale.

## III. DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS BASED ON LACK OF PROBABLE CAUSE

### 1. Reasonable Suspicion to Justify the Initial Stop.

Under Terry v. Ohio, 392 U.S. 1 (1968), "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123, (2000). The reasonable suspicion required for a Terry stop is a less demanding standard than probable cause since it "requires a showing considerably less than preponderance of the evidence" and can "arise from information that is less reliable" than that required to establish probable cause. United States v. Valentine, 232 F.3d 350, 353 (3d Cir. 2000) (internal citations omitted). Even in situations in which the conduct justifying the initial stop is susceptible to an innocent explanation, Terry recognized that an individual could be detained for the purpose of resolving any ambiguity. Wardlow, 528 U.S. at 125.[11]

_____

[11] As an initial matter, the affidavit in support of probable cause notes that the officers observed that the

The Defendant renews his arguments with respect to the reliability of the informants relied upon by the SIU to form the reasonable suspicion used to justify the Defendant's traffic stop.  The Defendant reiterates that the following contradictions exist based on the information provided by the informants to the SIU: (1) that the Defendant only sold drugs in bulk; (2) that the Defendant did not sell narcotics from his Residence; (3) that the Defendant traveled to New York City once a week to purchase pills;[12] (4) the bias of the information

---

Defendant's Vehicle had "dark tinted windows," which alone was sufficient to justify the initial traffic stop of the Defendant. See 75 Pa. C.S.A. § 4524(e)(prohibiting a vehicle from having any material that prevents a person from seeing inside the vehicle); Whren v. United States, 517 U.S. 806, 810-13 (1996) (establishing that a technical traffic violation legitimizes a stop); United States v. Mosley, 454 F.3d 249, 252 (3d Cir. 2006); United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003) ("After a traffic stop that was justified at its inception, an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation."). Here, however, the officers specifically noted that the stop was based upon the GPS surveillance and not the traffic violation, thus the initial stop and subsequent arrest cannot rest on this ground.

[12]   The Defendant submits that Person 2's statement that the Defendant made trips at least once a week to New York City was contradicted by the absence of any documented trips resulting from the GPS monitoring, and thus, undermines a finding of probable cause or reasonable suspicion  (Def.'s Mot. to Suppress Evid. and Statements ¶ 12.)  The Defendant fails to recognize that Person 1 informed the SIU that the Defendant traveled to New York City to purchase narcotics, but did not give a specific frequency for these trips.  Therefore, the SIU was permitted to resolve this discrepancy to conclude that the Defendant made recurring trips to New York City to purchase narcotics in spite of the uncertainty as to how often these trips occurred.

-23-

provided by Person 1 with respect to the circumstances of his arrest and the subsequent Controlled Buy; and (5) Person 2's statements that he was stringing along law enforcement officials in their investigation.

Knowledge provided by informants, when coupled with independent investigatory corroboration, can demonstrate sufficient indicia of reliability to create the reasonable suspicion necessary to justify a <u>Terry</u> stop. <u>Alabama v. White</u>, 496 U.S. 325, 332 (1990); <u>United States v. Silveus</u>, 542 F.3d 993, 1000 (3d Cir. 2008). As explained in further detail above, the "contradictions" emphasized by the Defendant are weak or nonexistent. Although the Defendant is able to demonstrate that certain information provided to the SIU is not entirely consistent, the detailed information regarding the Defendant's persistent drug-related activities, when corroborated by the SIU's investigation and the Controlled Buy, provided a sufficient basis for the reasonable suspicion necessary to initiate the traffic stop of the Defendant's Vehicle.

The Defendant echoes his argument that the staleness of the information relied upon by the SIU fails to provide the reasonable suspicion or probable cause necessary to justify the traffic stop. As previously discussed, the information relayed to the SIU related to the ongoing drug-related activities of the

Defendant, which rendered the information more durable in terms of providing reasonable suspicion or probable cause.  See Urban, 404 F.3d at 774-75.  Moreover, the SIU relied directly upon information transmitted from the GPS device hours before the traffic stop was made.  In the context of the Defendant's continuous illegal activities, the information relied upon by the SIU to justify the traffic stop was relatively fresh and forecloses the Defendant's staleness argument.

        The Defendant's argument that no reasonable suspicion existed due to the information obtained from the GPS device because the exact location of the Defendant's stop in New York City was not known by SIU to be a drug-related area, the Defendant's presence in the Vehicle was not confirmed by the SIU, and monitoring of the GPS device revealed no previous trips to New York City, is unavailing.  The showing of reasonable suspicion is demonstrated by the fact that the Vehicle was driven directly to New York City, remained there for less than 15 minutes, then immediately began a return trip to Pennsylvania.[13]  The experience and specialized training of SIU officers indicated that a two hour trip from Pennsylvania to New York City for the purpose of a 15 minute stop was itself entirely consistent with drug trafficking activity and

---

[13]    The Defendant's Vehicle made one brief stop at a rest stop on the New Jersey Turnpike.

constitutes the requisite reasonable suspicion to warrant the traffic stop.  Assuming arguendo that the Defendant's actions were susceptible to an innocent explanation, the SIU was authorized to execute the traffic stop to resolve any ambiguity. Wardlow, 528 U.S. at 125.

Defendant further argues that reasonable suspicion did not exist due to the failure of law enforcement to confirm his presence in the Vehicle as it traveled to and from New York City.  While Defendant is correct that SIU officers did not establish his presence in the Vehicle through visual confirmation, this fact is not material to the finding of reasonable suspicion.  The Defendant fails to acknowledge that the reasonable suspicion justifying the stop was founded on substantial information provided to SIU officers that this particular Vehicle traveled to New York City to conduct narcotics activity.[14]   Therefore, regardless of the identity of

---

[14]     Even assuming SIU officers could not confirm the identity of the Defendant, reasonable suspicion existed to justify the initial stop of the Vehicle.  See United States v. Goodrich, 450 F.3d 552, 561 (3d Cir. 2006) (holding that Terry stop was justified despite the absence of information identifying either the vehicle or the suspects where the external circumstances surrounding the initial stop indicated that the vehicle was involved in the reported criminal activity); United States v. Lucky, 569 F.3d 101, 106 (2d Cir. 2009) (holding that officers had reasonable suspicion to conduct investigatory stop of defendant's car based solely on vehicle having matching license plate and description as one involved in a shooting two days earlier); United States v. Marxen, 410 F.3d 326, 331 (6th Cir. 2005) (holding that investigative stop was justified where defendant's vehicle matched the make, model, general color, and

the driver, reasonable suspicion existed to initiate a traffic stop of the Vehicle itself based upon the 15 minute stay in New York City.

**2.   Probable Cause to Detain the Defendant.**

"Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." United States v. Meyers, 308 F.3d 251, 266 (3d Cir. 2002) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)).  Under the applicable "totality-of-the-circumstances" test, sufficient probable cause existed during the traffic stop to justify further investigation by SIU officers.  The Defendant's actions in response to the traffic stop are relevant in determining whether the SIU officers had probable cause to conduct a further investigation.  See United States v. Ten Thousand Seven Hundred Dollars and No Cents in U.S. Currency, 258 F.3d 215, 226-27 (3d Cir. 2001) (finding that a suspect's nervous demeanor, suspicious behavior and inconsistent answers during a traffic stop are of probative value in determining probable cause);

---

license number of an automobile used in a robbery); United States v. Reid, Civ. No. 01-4122, 2002 WL 90985, *1 (4th Cir. Jan. 24, 2002) (finding that a tip providing that defendant's vehicle matched the description of a car involved in an armed robbery committed several days earlier provided reasonable suspicion for a Terry stop).

Frost, 999 F.2d at 743-44 (finding that nervous behavior and contradictory answers to questions from law enforcement combined with other indicia of drug related activity satisfied a showing of probable cause).  Here, the Defendant's (1) nervous behavior; (2)evasiveness to questioning by SIU officers; (3) deception as to his travel to New York City; and (4) loud sigh in response to the statement that he was looking at "jail for a long time;" when coupled with the previous information known to SIU officers implicating the Defendant's narcotics-related activities, dictates that probable cause existed to detain the Defendant.[15]

In conclusion, the Government has established that reasonable suspicion and probable cause existed to justify the initial traffic stop and subsequent detention and interrogation of the Defendant, and thus, the fruits of this stop are not excludible.

## IV. CONCLUSION

For the reasons set forth above, the motion to suppress based on defective warrants and the motion to suppress evidence and statements based on lack of probable cause will be

---

[15]     Even if these facts were insufficient to establish probable cause, since the search of the Defendant's Vehicle was authorized by a search warrant approved by a Bucks County District Judge, the "Good Faith Exception" to the exclusionary rule would likely apply to any evidence seized from the Vehicle. See Leon, 468 U.S. at 926.

denied.  An appropriate order follows.